| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Jimmie R. Thomas |
| Debtor 2 (Spouse, if filing) | Valerie Thomas |
| United States Bankruptcy Court for the: | Northern District of Alabama |
| Case number | 18-00001-DSC13 |

Official Form 410S1

# Notice of Mortgage Payment Change  12/15

If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.

Name of creditor: U.S. Bank Trust National Association, as Trustee of Dwelling Series IV Trust

Court claim no. (if known): 3-3

Last 4 digits of any number you use to identify the debtor's account: 5 6 6 4

Date of payment change:
Must be at least 21 days after date of this notice: 04/01/2021

New total payment: $ 445.95
Principal, interest, and escrow, if any

## Part 1: Escrow Account Payment Adjustment

1. Will there be a change in the debtor's escrow account payment?

   ☒ No
   ☐ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why: _____

   Current escrow payment: $ _____    New escrow payment: $ _____

## Part 2: Mortgage Payment Adjustment

2. Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?

   ☐ No
   ☒ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: _____

   Current interest rate: 2.000 %    New interest rate: 3.000 %
   Current principal and interest payment: $ 285.31    New principal and interest payment: $ 309.61

## Part 3: Other Payment Change

3. Will there be a change in the debtor's mortgage payment for a reason not listed above?

   ☒ No
   ☐ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement.
   (Court approval may be required before the payment change can take effect.)

   Reason for change: _____
   Current mortgage payment: $ _____    New mortgage payment: $ _____

Debtor 1 __Jimmie R. Thomas__    Case number (if known) __18-00001-DSC13__
First Name   Middle Name   Last Name

### Part 4: Sign Here

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☐ I am the creditor.

☒ I am the creditor's authorized agent.

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

✖ __/s/ D. Anthony Sottile__    Date __03/08/2021__
Signature

Print: __D. Anthony Sottile__    Title __Authorized Agent for Creditor__
First Name   Middle Name   Last Name

Company __Sottile & Barile, LLC__

Address __394 Wards Corner Road, Suite 180__
Number   Street

__Loveland__    __OH__   __45140__
City   State   ZIP Code

Contact phone __513-444-4100__    Email __bankruptcy@sottileandbarile.com__

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"): **Jimmie Ray Thomas**
Lender or Servicer ("Lender"): **America's Servicing Company**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **09/02/2005**
Loan Number: ▮▮▮▮▮▮▮
Property Address ("Property"): **7134 1ST AVE SOUTH BIRMINGHAM, AL 35206-5103**

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **Borrower Representations.**

   I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. I certify the Property is not condemned and is not vacant without the intent to either re-occupy or rent;

   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents;

   D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and,

   G. I have made or will make all payments required within this modification process.

2. **Acknowledgements and Preconditions to Modification.**

   I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and,

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I" or "my") shall include the plural (such as "we" or "our") and vice versa where appropriate.

Multistate Home Affordable Modification Agreement – Single Family (page 1 of 8 pages)

B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

C. If included, the undersigned borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.

3. **The Modification.**

If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **March 01, 2016** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a Mortgage Assistance or trial period plan, this modification will not take effect. The first modified payment will be due on **April 01, 2016**.

A. The new Maturity Date will be: **October 01, 2038**.

B. The modified principal balance of my Note will include amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, valuation, property preservation, and other charges not permitted under the terms of the HAMP modification, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$62,173.32** (the "New Principal Balance") I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of **2.000%** will begin to accrue on the New Principal Balance as of **March 01, 2016** and the first new monthly payment on the New Principal Balance will be due on **April 01, 2016** Interest due on each monthly payment will be calculated by multiplying the New Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12). My payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 60 | 2.000% | 03/01/2016 | $285.31 | $136.34 | $421.65 | 04/01/2016 |
| 12 | 3.000% | 03/01/2021 | $309.61 | $136.34 | $445.95 | 04/01/2021 |
| 199 | 3.625% | 03/01/2022 | $324.59 | $136.34 | $460.93 | 04/01/2022 |

**\*This includes an escrow shortage amount to be paid over the first 60 month term. After your modification is complete, escrow payments adjust at least annually in accordance with applicable law therefore, the total monthly payment may change accordingly.**

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

Case 18-00001-DSC13    Doc    Filed 03/08/21    Entered 03/08/21 13:52:41    Desc Main
Document    Page 5 of 11

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements.**

I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Mortgage Assistance that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.E. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.E.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree, that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.O. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P. CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants **America's Servicing Company**, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification.

Q. If the mortgage is a biweekly mortgage with payments due every two weeks, through the attached modification agreement, the Loan will convert to a MONTHLY payment schedule. To accommodate monthly payments, interest will be charged based on a 12 month year and a 30 day month. As part of the conversion from biweekly to monthly payments; any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan is cancelled. Complete the enclosed Automatic Loan Payment Authorization form to establish automatic payment drafting.

R. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit and if so, I confirm and acknowledge that no additional advances may be obtained.)

S. By signing this Agreement the Borrower hereby consents to being contacted concerning their loan at any cellular or mobile telephone number they may have. This includes text messages and telephone calls including the use of automated dialing systems to contact any cellular or mobile telephone. The Borrower may be billed by the cellular or mobile carrier for any text messages that Lender may send. Any calls Lender places to the Borrower's cellular or mobile phone may incur normal airtime charges assessed by the mobile carrier.

**All Borrowers are required to sign and date this Agreement in blue or black ink only as your name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to you to be signed.**

**By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.**

_Marcellin Zomatchi_
Wells Fargo Bank, N.A.

**Marcelline Zomatchi**
Vice President Loan Documentation
By: _ML_

_3/17/16_
Date

_Jimmie Ray Thomas_ (Seal)
Jimmie Ray Thomas

_3-6-16_
Date

_____(Seal)

_____
Date

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
BIRMINGHAM DIVISION

| | |
|---|---|
| In Re: | Case No. 18-00001-DSC 13 |
| Jimmie R. Thomas<br>Valerie Thomas | Chapter 13 |
| Debtors. | Judge D. Sims Crawford |

## CERTIFICATE OF SERVICE

I certify that on March 8, 2021, a copy of the foregoing Notice of Mortgage Payment Change was filed electronically. Notice of this filing will be sent to the following party/parties through the Court's ECF System. Party/Parties may access this filing through the Court's system:

    Paula C. Greenway, Debtors' Counsel
    noticing@greenwaylaw.com

    Bradford W. Caraway, Chapter 13 Trustee
    ctmail@ch13bham.com

    Office of the United States Trustee
    (registeredaddress)@usdoj.gov

I further certify that on March 8, 2021, a copy of the foregoing Notice of Mortgage Payment Change was mailed by first-class U.S. Mail, postage prepaid and properly addressed to the following:

    Jimmie R. Thomas, Debtor
    7134 1st Ave. South
    Birmingham, AL 35205

Valerie Thomas, Debtor
7134 1st Ave. South
Birmingham, AL 35205

Dated: March 8, 2021         /s/ D. Anthony Sottile
                             D. Anthony Sottile
                             Authorized Agent for Creditor
                             Sottile & Barile, LLC
                             394 Wards Corner Road, Suite 180
                             Loveland, OH 45140
                             Phone: 513.444.4100
                             Email: bankruptcy@sottileandbarile.com